04-1507

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

NATIONAL AMERICAN INSURANCE
COMPANY,

          Plaintiff-Appellant,

v.

J.R. MISKEN INSURANCE SERVICES,
INC., SIGNATURE UNDERWRITERS, INC.,
and JAMES R. MISKEN,

          Defendants-Appellees.

On Appeal from the United States District Court
for the District of Colorado

The Honorable Richard P. Matsch
Senior District Judge

Civil Action No. 02-M-1990

APPELLANT'S REPLY BRIEF

**(Exhibits Scanned and Included in Separate PDF File)**

Respectfully submitted:          R. Patrick Gilmore, OBA #3384
          1010 Manvel Avenue
Ira L. Edwards, Jr., OBA#2637          Chandler, Oklahoma 74834
Sharon K. Weaver, OBA #19010          (405) 258-4262 - Telephone
**RIGGS, ABNEY, NEAL, TURPEN,**          (405) 258-4520 - Facsimile
**ORBISON & LEWIS**
502 West Sixth Street          Steven Janiszewski – **Riggs, Abney**
Tulsa, Oklahoma  74119-1010          7979 East Tufts Avenue Parkway, Suite 1300
(918) 587-3161  -  Telephone          Denver, Colorado 80237
(918) 587-9708  -  Facsimile          (303) 298-7392 – Phone (303) 298-7398 - Fax

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii.

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1-2

    I.    THE DISTRICT COURT ERRED IN RULING THAT   3-7
           NAICO'S CLAIM ON THE S&P BOND FAILED
           FOR LACK OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    II.   NAICO HAS SHOWN DAMAGES CONSISTENT   8-15
           WITH ITS THEORY OF LIABILITY AGAINST MISKEN . . . . . . . .

         A.   Contrary to Misken's Contention, the District   9
              Court Received Expert Testimony on the Issue
              of Damages Causation . . . . . . . . . . . . . . . . . . . . . . . . . .

         B.   There Are Not Multiple Causes of Loss in   9-15
              This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

CERTIFICATE OF MAILING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*i*

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                    **<u>PAGE</u>**

*Mountbatten Surety Company v. Brunswick Insurance Agency*,
2001 WL 34371699 (E.D. Penn. 2001)   . . . . . . . . . . . . . . . . . . . . . . . .   3


**<u>STATUTES , RULES AND REGULATIONS</u>**          **<u>PAGE</u>**

Fed.R.App.P. Rule 38 Advisory Committee Notes . . . . . . . . . . . . . . . . .   15



**<u>OTHER</u>**                                                                    **<u>PAGE</u>**

COMES NOW Appellant National American Insurance Company, ("NAICO") and for its brief in Reply to Appellees' Response Brief respectfully submits the following:

## INTRODUCTION

Initially it is important to note that Appellees James R. Misken, J.R. Misken Insurance Services, Inc. and Signature Underwriters, Inc. (collectively "Misken" for simplicity) do not specifically challenge the legal arguments and authorities cited by NAICO in its Opening Brief. Instead, in an attempt to cloud the issues, Misken presents page after page of red-herring arguments, facts and citations to the record which either have no bearing on the matter before this Court or which have been taken out of context and extrapolated into an interpretation inconsistent with the record on appeal.

Additionally, Misken has taken great liberty with the record, attempting to place before this Court evidence which was not before the trial court.[1]  The numerous misstatements of Misken regarding the trial proceedings are even more disturbing.  One extreme example is Misken's statement of the Court's findings on

---

[1] Misken attempts to place before this Court certain evidence and testimony which is not part of the record on appeal.  Such are: (1) Appellee Supp App at 84:4, cited at p.4 of Appellees' Response, was not part of Robert Kemp's testimony designated for the trial court's consideration; (2) Appellee Supp App at 208:18-209:23, cited at p.7 of Appellees' Response was not part of Michael Saba's testimony designated for the trial court's consideration; (3) Appellee Supp App at 337, cited at p.14 of Appellees' Response was never offered into evidence in the trial proceeding and therefore is not part of the record for this Court's consideration.  None of these materials should be considered by this Court as they were not before the trial court.

the issue of the S&P Bond. (*See* Appellees' Response at p.2). Contrary to Misken's representation, the District Court did not find that no "additional premium had been earned since the final contract value never exceeded the value of the site excavation agreement"; nor did the District Court find, as Misken states, that the "power of attorney physically attached to the S&P bond eliminated any NAICO risk of loss". (*See* Appellees' Response at pp.2-3). Interestingly, Misken does not cite to the record in support of its construal of the Court's findings. It does not cite the record, because the record does not contain the alleged findings.

The liberties taken by Misken with the record in this case, particularly with the order entered by Judge Matsch, are astounding. Correction of all misstatements and extrapolations would require too much space in the confines of NAICO's Reply. Additionally, some of the facts and arguments presented by Misken are but a smokescreen in an apparent attempt to distract this Court from the real claims of error at issue. NAICO does not wish to engage in needless argument over the record, as this Court is certainly capable of interpreting the evidence presented; nor does NAICO intend to merely restate the arguments set forth in its Opening Brief. However, NAICO will address Misken's misstatements which are material to the issues on appeal. After reviewing the legal arguments and authorities presented and the record on appeal, it will be clear to this Court that the District Court's judgment is in error and must be reversed.

## I.  THE DISTRICT COURT ERRED IN RULING THAT NAICO'S CLAIM ON THE S&P BOND FAILED FOR LACK OF PROOF

The central issue regarding NAICO's claim for additional premium on the S&P Bond is whether or not Misken breached his contract with, and his fiduciary duty to, NAICO.  Broken down, it is really a simple issue which Misken attempts to cloud and muddle into a twisted, convoluted issue.

Misken does not deny that he was bound, in his relationship with NAICO, to act in accordance with the terms and provisions of the Surety Producer Agreement dated April 1, 1999 (hereinafter "SPA").   The express language in the SPA provides that:  **"The Agent shall be responsible for the payment of all earned premiums whether or not collected."**  (Trial Ex. 11, Aplt. App. at 150)(emphasis added); *See* Mountbatten Surety Company v. Brunswick Insurance Agency, 2001 WL 34371699 (E.D. Penn. 2001)(holding agent liable for premium due pursuant to agency agreement requiring agent to pay premium to surety regardless of whether agent collected from client)(Aplt. App. at 105).

The S&P Bond, which incorporated the October 1, 1999 AIA construction contract for the Stevens Place Apartment project, was issued on December 20, 1999.  (Trial Ex. 4, Aplt. App. at 135-36).   There is no dispute that the bond, on its face, was not limited to site work and excavation.  (Tr. Aplt. App. at 288:2-4). The construction contract reflects an initial contract sum of $2,793,960.00.   This contract is not limited to site work and excavation, but is, instead, a contract for

construction of the complete Stevens Place Apartment project.  (Trial Ex. 1, Aplt. App. at 123-33; Curry depo. Aplt. App. at 97-98).

The contract itself, in fact, requires the contractor to obtain a 100% performance bond and a 100% payment bond.  (Trial Ex. 1, Aplt. App. at 129; Curry depo. at 25:1-21, attached hereto as Exhibit "A").[2]  Brenda Curry testified that she instructed the contractor to obtain a bond for the entire project.  (Curry depo. Exhibit A at 25:1-21).  Contrary to Misken's representation, the contract was finalized prior to issuance of the bond and was, in fact, incorporated on the face of the bond.  (*See* Appellees' Response at 19).

Additionally, one rather important fact further evidencing the fatal flaw in Misken's argument is that the site work and excavation were already completed prior to issuance of the S&P Bond.  Both of the owners of Tri-Vest, the general contractor of the Stevens Place Apartment project and the principal on the S&P Bond, testified that the site work and excavation at the project were completed in early December 1999 at the latest.  The S&P Bond was issued December 20, 1999.

---

[2] Prior to submission of its Opening Brief, NAICO sent a letter to counsel for Misken listing items it anticipated including in the Appendix and requesting that Misken designate additional items for inclusion in an effort to submit a joint appendix between the parties.  Misken's counsel did not respond and NAICO submitted Appellant's Appendix with its Opening Brief. Subsequently, Misken submitted Appellees' Supplemental Appendix with its Response Brief.  In order to Reply to the arguments raised by Misken in its Response, it is necessary for NAICO to attach additional references to the record as exhibits to its Reply.  Counsel for NAICO telephoned the Court on June 22, 2005 seeking guidance for the proper form in which to do so. Counsel was instructed that as long as the additional material amounted to only a few pages of deposition testimony that it could be attached as exhibits to the Reply Brief.

(Deposition of Craig Clarambeau ("Clarambeau depo.") at 14:4-7, 14:24-15:22, attached hereto as Exhibit "B"; Deposition of Calvin Marshall ("Marshall depo.") at 12:12-13:13, attached hereto as Exhibit "C").

Therefore, it is quite clear that Misken's argument that the S&P Bond was intended to cover only site work and excavation could not possibly be plausible. There would be no reason for Tri-Vest to obtain a bond for work done after completion of that work. Moreover, why would the S&P Bond incorporate the Stevens Place Apartment project AIA contract, in its entirety, on the face of the bond if: (1) the contract was not yet finalized; and, (2) the bond was only to cover the site work and excavation contemplated in the Limited Notice to Proceed?

Misken makes a point of arguing that prior to writing the S&P Bond, he received a copy of the construction contract, via facsimile, presumably from Brenda Curry. NAICO does not dispute that the fax originated from a number associated with the Stevens Place Limited Partnership and presumably from Ms. Curry. Notably, there have been no allegations made that Ms. Curry was in any way responsible for altering the contract documents. Even more important is the testimony of Ms. Curry that she signed only one Stevens Place Apartment project contract and that the contract she signed reflected a contract sum of $2,793,960.00. Moreover, the Stevens Place Limited Partnership paid $55,879.20 as premium on the full initial contract price. (Curry depo., Aplt. App. at 97-98; Trial Ex. 12, Aplt.

App. at 164; Trial Ex. 5 & 6, Aplee. Supp.  App. at 241-42).

Based on the evidence presented, it is illogical to conclude anything except that Ms. Curry faxed the AIA Stevens Place Apartment project contract to Misken in December of 1999 in the only form that she possessed, the one reflecting the contract price of $2,793,960.00.  Bill Ford and Misken were acquaintances, having previously done business together.   The undisputed evidence in this case establishes that Bill Ford and/or Misken sent Signature Underwriters documents to Tri-Vest for completion and return in order to acquire the bond.  (Tr. Aplt. App. at 280:20-281:4, 282:18-25, 268:5-18, 275:24-276:11).   Clearly, Ford and Misken worked together to issue the S&P Bond.

Despite the overwhelming evidence of his improper conduct, one crucial fact that Misken would like the Court to ignore is that, regardless of anything else, Misken was bound by the terms and provisions of his contract with NAICO to pay all earned premiums whether or not collected from the client.  Misken does not dispute his obligation under the terms of the SPA.  Misken does not dispute that the final contract amount on the Stevens Place Apartment project totaled $3,031,358.  Nor does Misken dispute that it was established at trial, as set forth in NAICO's Opening Brief, that the amount of premium to be collected was calculated based on 2% of the final contract price, not the penal sum of the bond. (Appellant's Opening Brief at pp.14-16).

The Stevens Place Apartment project was completed. The premium was earned. The final contract price exceeded $3Million and Misken did not pay the full premium thereon to NAICO. Therefore, it is axiomatic, according to general principles of contract law, that in failing to pay NAICO the entire premium due, Misken breached his contract with NAICO, breached his fiduciary duty to NAICO and is liable for the damages resulting therefrom. In this matter NAICO suffered damages of $35,439.00, the additional premium amount less Misken's contractual commission percentage. Misken's additional arguments advanced regarding Misken's power of attorney and the fact that no claim was ever made on the S&P Bond are red-herrings, apparently included in an effort to distract the Court from the general principles of contract law applicable in this matter. The contract language is clear and unambiguous; agents are responsible for the full premium earned whether or not collected. Even if there are no claims on the bond, the full premium is still due and is still calculated based on the actual contract price. (Tr. Aplt. App. at 288:2-18); (Tr. Aplt. App. at 477:8-480:18).

The District Court clearly ignored basic contract principles and Misken's breach of fiduciary duty in reaching its decision. The District Court's decision that NAICO's claim on the S&P Bond failed for lack of proof is clearly erroneous, against the weight of the evidence presented, and must be reversed.

## II.  NAICO HAS SHOWN DAMAGES CONSISTENT WITH ITS THEORY OF LIABILITY AGAINST MISKEN

It has already been determined by the District Court that Misken breached his contract with, and his fiduciary duty to, NAICO by issuing the unauthorized Consent of Surety on November 2, 2000.  (Order, Aplt. App. at 88-89).  Misken did not appeal this decision.   In issuing the unauthorized Consent of Surety, Misken exceeded the scope of the agency granted to him and misused the power of attorney with which he was entrusted.

Misken's Response fails to address the fact that Misken specifically agreed, in the SPA, to indemnify and hold harmless NAICO from any loss or injury resulting from or in connection with Misken's violation of authority or misuse of the power of attorney.  (Tr. Aplt. App. at 265:5-13); (Trial Ex. 11, Aplt. App. at 161).   Misken's unauthorized issuance of the Consent of Surety exceeded his authority, violated his agency, breached the contract, breached his fiduciary duty to NAICO, misused the power of attorney and resulted in significant loss to NAICO.  Misken is contractually required to indemnify NAICO for all loss or injury resulting from or in connection with said violations.  (Trial Ex. 11, Aplt. App. at 161).

Misken contends that NAICO failed to prove a causal connection between Misken's violations of the SPA and the damages suffered by NAICO.  NAICO's Opening Brief presents the testimony and evidence received at trial which clearly

establish the causal connection between Misken's actions and the resulting damage to NAICO. (*See* Appellant's Opening Brief at 17-28).

## A.  Contrary to Misken's Contention, the District Court Received Expert Testimony on the Issue of Damages Causation

First and foremost Misken's misrepresentation of the record regarding the testimony of NAICO's expert Todd Bauer must be corrected. NAICO's damages claim was presented at trial in Exhibit 89. (Trial Ex. 89, Aplt. App. at 211-217); (Tr. Aplt. App. at 800:20-801:3). In Guardian Group's expert report, received into evidence at the trial of this matter, Mr. Bauer attributed the losses suffered by NAICO, set forth in Exhibit 89, to the conduct of Misken. (Trial Ex. 87, Aplt. App. at 201).

Only a portion of Mr. Bauer's testimony was stricken from the record at trial. (Tr. Aplt. App. at 803:18-21). Mr. Bauer's testimony regarding NAICO's damages reflected in Exhibit 89 and Guardian Group's expert report was received into evidence and is in the record now before this Court. (*See* Appellant's Opening Brief at 23-25).

## B.  There Are Not Multiple Causes of Loss In this Action

As NAICO argued in its Opening Brief and despite the arguments advanced in Appellees' Response, there were not multiple causes of loss presented in this case, nor were there multiple unrelated defendants responsible for the harm. Misken's blanket claim that NAICO presented no credible evidence of causation or

damages is blatantly false.  Misken's own expert, Mr. John J. Dowling, testified at trial that approximately $1.7Million in contract funds was released by the general contractor to A&B as a result of the Consent of Surety.  (Tr. Aplt. App. at 952:19-953:1).  With notice prior to or at the time the unauthorized Consent of Surety was written by Misken, those funds would have been available to NAICO to properly manage and complete the projects and to avoid a loss.

Misken claims that the projects were "significantly underbid".  (*See* Appellees' Response at 6).  Misken, however, ignores the testimony of John Blackmon, former A&B employee, who testified that in bidding the projects he not only did the take-offs and ran the numbers, but that Mr. Kemp reviewed and approved the numbers before the bids went out.  (Deposition of John Blackmon ("Blackmon depo.") at 14:20-15:2, 73:1-5, attached hereto as Exhibit "D").  Mr. Blackmon also testified that he did not believe the projects were underbid and that A&B's bids were "right in line" with the other contractors.  (Blackmon depo., Exhibit D at 26:16-23).  Mrs. Kemp affirmed that A&B had rechecked and was comfortable with its bid on the Winternheimer school project in an April 25, 2000 letter to Misken.  (Trial Ex. 18, Aplee. Supp. App. at 244).

Mrs. Kemp testified at trial that after the projects had defaulted, during NAICO's investigation, she searched John Blackmon's office attempting to locate information relating to the jobs.  She unsuccessfully looked for plans and

specifications for the projects. (Tr. Aplt. App. at 914:24-916:1). She testified also that the plans and specifications were necessary for A&B's use every day on the jobs. (Tr. Aplt. App. at 915:19-21).

By the time Mrs. Kemp was searching Mr. Blackmon's office A&B had already defaulted, NAICO had already brought in Kurt Faux and the Guardian Group and the school projects were substantially completed. Misken attempts to transform Mrs. Kemp's inability to locate this documentation into evidence that Mr. Blackmon failed to properly bid the school projects. If A&B needed the specs and plans to perform the work on the schools, presumably they had those during construction. There is no dispute that A&B was completely disorganized and sloppy in its record-keeping. This does not mean that Mr. Blackmon improperly bid or substantially underbid the jobs. Misken's argument in this regard is unfounded.

The only evidence on this subject presented at trial was that the four elementary school projects could have been completed for the amount of the contract funds remaining on November 2, 2000. Mr. Bauer testified that the projects were not underbid and could have been completed for the available contract funds had NAICO been notified at the time Misken issued the unauthorized Consent. (Tr. Aplt. App. at 720:23-721:6, 805:18-806:16, 806:21-807:1-808:5). There was no contrary evidence.

Misken claims that the Consent of Surety authorized the general contractor to release "earned subcontract funds" so that A&B could pay its payroll. One must give the Consent of Surety only a cursory examination to see that Misken's contention is, again, a misstatement of the record. There is no limitation in the Misken drafted Consent which specifies that only earned contract funds are to be released. (Trial Ex. 48, Aplt. App. at 196). Likewise, there is no evidence that A&B used the released funds only to meet payroll obligations.

As another alleged cause of loss, Misken appears to claim that over $1.5Million in payment bond claims existed prior to November 2, 2000. Misken, though, does not cite any evidence in the record to support this contention. Indeed, there was no evidence presented at trial that any claims existed prior to November 2, 2000. Misken's argument in this regard is not supported by the record and should be disregarded by this Court.

On still another theory, Misken attempts to showcase alleged failures and inactions on the part of NAICO as contributing to NAICO's losses. The more appropriate focus in this appeal, is the knowledge Misken had and the actions Misken took or failed to take. NAICO detailed the facts established at trial concerning Misken's conduct in Appellant's Opening Brief at pp. 2-9, 17-27.

Misken cites a number of "red flags" it claims NAICO should have acted upon. Misken fails to consider the fact that NAICO did act reasonably in

requesting additional information from Misken to address its concerns on the projects and in relying on Misken's responses. (Tr. Aplee. Supp. App. at 202:4-19); (Tr. Aplt. App. at 832:13-833:3). Misken claims that NAICO's underwriter J.B. Rankin failed to appreciate the profit fades reflected on A&B's October 2000 work in progress report and argues that NAICO should have notified its claims department at that time. James Misken himself, however, testified at trial that there were no claims in October of 2000, that he did not see this as a claim situation and that every indication he received was that there was no problem. (Tr. Aplt. App. at 430:25-431:23). Additionally, Misken testified that he knew where to get the information and could probably get it faster than the claims department. (Tr. Aplt. App. at 430:21-24). In fact, Misken responded to Mr. Rankin's inquiries in a letter dated October 31, 2000, just two days before he issued the Consent, reporting that all jobs were "being performed well". (Trial Ex. 47, Aplt. App. at 195). NAICO was justified in relying on Misken's reassurances.

Despite these reassurances by Misken, he knew at that time that A&B had not completed a prior drywall job, that A&B was bidding other projects and seeking bonding through another surety, and that A&B was having trouble making its payroll. (Order, Aplt. App. at 85); (Trial Ex. 40, Aplt. App. at 188); (Trial Ex. 47, Aplt. App. at 195); (Trial Ex. 50, 51, Aplt. App. at 197-198). Instead of informing NAICO and affording it the opportunity to take control of the estimated

$2Million in contract funds remaining at that time, Misken issued the unauthorized Consent of Surety which ultimately resulted in contract funds being depleted, the projects and the funds being mismanaged, A&B being defaulted, and over $2Million in claims being made on the bonds.  Misken's conduct clearly resulted in NAICO's lost opportunity to control the projects and the contract funds and to avoid a loss.  (Tr. Aplt. App. at 805:18-806:16, 807:8-22).

Misken further erroneously contends that NAICO saw nothing wrong with the Consent and, in fact, ratified Misken's unauthorized conduct.  The evidence established that when it learned of the trouble on the projects, NAICO authorized the general contractor to make one additional payment to A&B in an effort to avoid a default and immediately began investigation into the status of the projects. NAICO's primary concern at that time was getting an understanding of the pertinent facts to evaluate what could be done both at that time and going forward. (Tr. Aplt. App. at 521:19-525:1); (Tr. Aplt. App. at 548:13-549:2).  Misken's conduct was neither ratified nor approved by NAICO.

Also contrary to Misken's Response, NAICO does raise the issue that had Misken properly advised NAICO of A&B's lack of prior drywall experience it would have either rejected issuance of the bonds altogether, or, at the very least, required special precautions prior to issuance.  (Appellant's Opening Brief at 25-26 and record cited therein).

Lastly, Misken argues that NAICO failed to mitigate its damages by failing to timely respond to the January 11, 2001 default notice.  Upon receipt of said letter NAICO's claims department went to work and within five days had hired Kurt Faux who immediately began evaluating the status of these projects.  (Tr. Aplt. App. at 588:15-596:7).  There was no delay or failure to timely respond by NAICO.  It is peculiar that Misken would attempt to place blame for NAICO's losses on an erroneously alleged two week delay in responding to the default notice, while maintaining that Misken bears no responsibility when his failure to inform NAICO of the unauthorized Consent delayed NAICO's involvement for approximately nine weeks.

## **CONCLUSION**

NAICO's losses resulted directly from Misken's violations of the Surety Producer Agreement.  Misken's misuse of his agency and power of attorney breached his contract with and fiduciary duty to NAICO resulting in significant losses in excess of $2Million.  Furthermore, Misken was contractually bound to pay NAICO for all premium earned whether or not collected and is liable for the additional premium on the S&P Bond.  The decision of the District Court is clearly erroneous and against the evidence presented in this case and must be reversed.[3]

---

[3] Rule 38 sanctions can only be sought by separate motion and not raised in a party's brief for sufficient notice to be provided.  Fed.R.App.P. Rule 38 Advisory Committee Notes.

Respectfully submitted,


By:  s/ Sharon K. Weaver
Ira L. Edwards, Jr., OBA#2637
Sharon K. Weaver, OBA #19010
**RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS**
502 West Sixth Street
Tulsa, Oklahoma  74119-1010
(918) 587-3161  -  Telephone
(918) 587-9708  -  Facsimile

-and-

Steven Janiszewski
**RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS**
7979 East Tufts Avenue Parkway,
Suite 1300
Denver, Colorado 80237
(303) 298-7392 - Telephone
(303) 298-7398 – Facsimile

-and-

R. Patrick Gilmore, OBA #3384
1010 Manvel Avenue
Chandler, Oklahoma 74834
(405) 258-4262
(405) 258-4520

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF MAILING**

I hereby certify that on the 29th day of June, 2005, I electronically submitted a true and correct copy of the foregoing instrument to the following:


    L. Jay Labe  jlabe@penberg.com

    Pendleton, Friedberg, Wilson & Hennessey, P.C.

    1875 Lawrence Street, 10th Floor

    Denver, CO   80202-1847


                      s/Sharon K. Weaver

                      Sharon K. Weaver